UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                                                Case No. 17-cr-175-pp

FONTAE KELLY,

        Defendant.

---

**ORDER OVERRULING OBJECTION (DKT. NO. 223), ADOPTING JUDGE JONES'S RECOMMENDATION (DKT. NO. 219) AND DENYING MOTION TO SUPPRESS (DKT. NO. 195)**

---

On February 19, 2019, Magistrate Judge David E. Jones issued a report recommending that this court deny defendant Fontae Kelly's motion to suppress the fruits of a video surveillance search. Dkt. No. 219. The defendant filed a timely objection to the recommendation, dkt. no. 223, and the government responded, dkt. no. 225. Because the court finds that the defendant did not have a reasonable expectation of privacy in the apartment's hallway or the exterior of the apartment building's entrance, the court adopts Judge Jones's recommendation and denies the defendant's motion to suppress.

**I.    BACKGROUND**

    A.    <u>Facts</u>

Jones Jones drew the "facts" section of his report and recommendation from the parties' briefs. Dkt. No. 219 at 1-2.¹ Judge Jones recounted that

---

¹ Neither party asked Judge Jones to conduct an evidentiary hearing. In his objection to the report and recommendation, the defendant asserted that, "[u]pon information and belief, the pole camera surveillance lasted at least 49 days." Dkt. No. 223 at 6. The defendant argues that Judge Jones "failed to account for the length of the pole camera surveillance . . . ." <u>Id.</u> In a footnote, the defendant says that "[i]f this Court desires additional facts, [the defendant]

1

> [b]ased on an investigation into drug distribution activities involving defendant and others, law enforcement installed a video surveillance camera in the hallway on floor level B of 2220 N. Martin Luther King Drive, Milwaukee, in September 2017. Motion to Suppress Fruits of Apartment Video Surveillance Searches 1. The video camera pointed at the exterior door to apartment unit B41 ("the apartment"). Id. at 2. Law enforcement also installed a "pole camera" on a utility pole in proximity to that same apartment complex. Response To Motion To Suppress Fruits of Apartment Video Surveillance Searches 1. On September 27, 2017, law enforcement executed a search warrant for unit B41 and found approximately 10 ounces of heroin, 33 grams of Fentanyl, a kilo press, a grinder, and a firearm. Id. at 2.

Dkt. No. 219 at 1-2. The apartment on Martin Luther King Blvd. was not the defendant's residence; he lived at 1810 N. 55th Street in Milwaukee. Dkt. No. 202 at 2.

B.  The Parties' Arguments

In asking the court to suppress the evidence, the defendant argued that the government's two video surveillances of the apartment building on Martin Luther King Blvd. constituted unreasonable searches under the Fourth Amendment. Dkt. No. 195 at 2. Citing the Supreme Court's decision in Carpenter v. United States, —U.S.—, 138 S. Ct. 2206 (2018), the defendant argued that the warrantless installation of two video surveillance cameras violated his reasonable expectation of privacy. Dkt. No. 195 at 3-9. He asked the court to find the warrantless searches presumptively unreasonable and to suppress all fruits of the two video surveillance cameras. Id. at 8 (citing Wong Sun v. United States, 371 U.S. 471, 484 (1963)).

---

requests this Court remand the matter to Magistrate [Judge] Jones for an evidentiary hearing." Id. at n.1.

The government responded that the court should deny the motion because the defendant had no legitimate expectation of privacy in either the apartment's hallway or the outer perimeter of the apartment complex. Dkt. No. 202 at 3. It noted that other courts in this district had held that pole camera surveillance did not violate the Fourth Amendment. Id. at 3 (citing United States v. Kay, Case No. 17-CR-16, Dkt. No. 149 (E.D. Wis. Apr. 23, 2018); United States v. Tirado Jr., Case No. 16-CR-168, Dkt. No 504, at 6-8 (E.D. Wis. Apr. 16, 2018); and United States v. Kubasiak, Case No. 18-CR-120, Dkt. No. 48 (E.D. Wis. Oct. 5, 2018)). The government maintained that the defendant did not have a reasonable expectation of privacy in the hallway of an apartment building in which he did not live. Id. at 4. It likened this case to United States v. Concepcion, 942 F.2d 1170 (7th Cir. 1991)), where the Seventh Circuit found that "a tenant has no reasonable expectation of privacy in the common areas of an apartment building." Concepcion, 942 F.2d at 1172. Finally, the government argued that Judge Jones should interpret the Carpenter decision narrowly and that, even if the court found the installation of the video surveillance to be an unreasonable search, it should uphold the searches under the good faith exception to the warrant requirement. Id. at 5 (citing United States v. Curtis, 901 F.3d 846, 849 (7th Cir. 2018) (upholding government's collection of warrantless CSLI data on good faith exception)).

C.  Judge Jones' Report and Recommendation

Judge Jones recommended that this court deny the motion to suppress. Dkt. No. 219 at 1. He noted that in determining whether a particular search was unreasonable, he had to consider "whether a trespass by law enforcement occurred, or whether an individual's reasonable expectation of privacy was violated by law enforcement." Id. at 2 (citing United States v. Jones, 565 U.S.

3

400, 408-09 (2012)). He observed that while the government bears the burden of justifying a warrantless search, the defendant carries the burden of showing that he had a reasonable expectation of privacy in the location searched. Id. (citing United States v. Villegas, 495 F.3d 761, 767 (7th Cir. 2007)). In reviewing Seventh Circuit and Supreme Court case law, Judge Jones found that an individual does not have a reasonable expectation of privacy in what he knowingly exposes to the public, California v. Ciraolo, 476 U.S. 207, 213 (1986), and that police may use surveillance technology to substitute for surveillance which they could lawfully have conducted themselves, United States v. Knotts, 460 U.S. 276, 282 (1983). Dkt. No. 219 at 2-3.

Judge Jones observed that the two surveillance cameras monitored the exterior entrance of apartment Unit B41 and the exterior entrance to the apartment building. Id. at 4. He likened these areas to the common areas of an apartment building and found that "the 'area outside one's door lacks anything like the privacy of the area inside.'" Id. (quoting Concepcion, 942 F.2d at 1172). Judge Jones discussed Carpenter, noting that the Supreme Court had deemed the holding "narrow" and had stated that it "did not 'call into question conventional surveillance techniques and tools, such as security cameras.'" Id. (quoting Carpenter, 138 S. Ct. at 2220). He also distinguished Carpenter on its facts, finding that Carpenter dealt with cell site location information ("CSLI") that could gather a detailed history of a person's whereabouts for a long period of time, whereas "the installed cameras at issue here only captured [the defendant's] comings and goings from one particular place for approximately nine days." Id. at 5. Judge Jones found that the cameras didn't capture any activity that neighbors, postal workers or law enforcement could not have observed with their own eyes. Id. Judge Jones concluded that because the

4

defendant had not shown that law enforcement violated his reasonable expectation of privacy, this court should deny the motion to suppress. Id. at 5.

   D.   The Defendant's Objection

The defendant alleges that Judge Jones made three errors: (1) he did not accurately apply Jones and Carpenter; (2) he improperly relied on Ciraolo, Knotts and Concepcion; and (3) he failed to consider cases from other courts holding that pole camera surveillance constitutes a search. Dkt. No. 223 at 1-2.

The defendant argues that he seeks to preserve as private "the sum of his movements while entering and leaving the 2200 N. Martin Luther King Jr. Blvd. apartment, including unit B41." Id. at 3. He argues that in Jones and Carpenter, the Supreme Court extended the "reasonable expectation of privacy" analysis from Katz v. United States, 389 U.S. 347, 351-52 (1967) to include a reasonable expectation of privacy for "the whole of his physical movements." Id. at 3 (citing Carpenter, 138 S. Ct. at 2219). The defendant criticizes Judge Jones for "fail[ing] to account for the difference between CSLI (cell-site location information) and the much more incriminating type of evidence in this case: images contained on the videos." Id. at 5. The defendant argues that Judge Jones should have discussed the length of the camera surveillance, noting that Carpenter held that collecting CSLI data for only seven days constituted a Fourth Amendment search. Id. at 6. The defendant alleges, "upon information and belief," that the pole camera surveillance here lasted forty-nine days. Id. at 6.

The defendant acknowledges that when the Fourth Amendment was drafted, the government could have assigned law enforcement to sit on top of a pole and watch the apartment, or to move into the apartment across the hall and watch through the peephole; this, he agrees, would have not have

constituted a search. Id. at 7. He asserts, however, that it is unlikely law enforcement would have done this—it would have been "highly impractical, as long-term physical surveillance was rarely used during the pre-computer age because it was difficult and costly." Id. at 7 (citing Jones, 565 U.S. at 429). The defendant argues that in September 2017, if law enforcement had tried to physically surveil the apartment (or record it on video) by sitting on a pole or renting the apartment across the hall, they would have been observed. Id. The defendant reasons that because law enforcement couldn't have conducted traditional physical surveillance without being seen, their use of a pole camera to do what they couldn't constituted an unlawful search. Id.

Asserting that Judge Jones incorrectly relied on Ciraolo, Knotts, and Concepcion, the defendant contends that Carpenter undermined the rationales grounding Ciraolo and Knotts because "*Carpenter* holds that a person has a reasonable expectation of privacy in the sum of his or her physical movements, even when exposed to the public." Id. at 8 (citing Carpenter, 138 S. Ct. at 2219). As for Concepcion, the defendant says that is the wrong comparator case (although he doesn't explain why). Id. at 9. He argues that the facts here are more analogous to those in United States v. Whitaker, 820 F.3d 849, 854 (7th Cir. 2016), where the Seventh Circuit found that law enforcement's use of a drug-sniffing dog to search the area outside an apartment door in an apartment hallway constituted a search. Id. at 9. Finally, the defendant insists that Judge Jones should have considered out-of-circuit cases that have concluded that pole camera surveillance of varying durations constituted a search. Id. at 10 (citing a case from the Fifth Circuit, district court cases from the District of Nevada, the Eastern District of Washington and the District of Massachusetts, and a case from the South Dakota Supreme Court).

6

E.  Government's Response

The government responds that the defendant asks the court to expand Supreme Court precedent and to "disregard well-established and well-accepted legal authority regarding reasonable expectation of privacy[.]" Dkt. No. 225 at 2. The government contends that the defendant's expectation of privacy is not "reasonable." Id. at 2-3. It observes that the pole camera surveillance law enforcement used is a "conventional surveillance technique" that revealed nothing about the defendant's personal life or his activities inside of, or away from, the two fixed locations of the hallway and the outer perimeter of the apartment complex. Id. at 3. The government claims that the aggregate of information collected from the video surveillance contained "far less detail" then the CSLI collected in Carpenter. Id. at 3-4. The government argues that the defendant would have the court "brush aside well-established law regarding reasonable expectation of privacy in the common areas of a multi-unit apartment building." Id. at 3 (citing Ciraolo, 476 U.S. at 213). Finally, the government notes that at least one court in this district has pointed out that neither the Supreme Court nor the Seventh Circuit have deemed long-term surveillance with pole cameras to constitute searches. Id. at 4 (citing Tirado, 2018 WL 1806056, at *4).

**II. Analysis**

A.  Standard of Review

Rule 59(b) governs dispositive motion practice initiated before magistrate judges. Fed. R. Crim. P. 59(b). Parties have fourteen days to file "specific written objections" to a magistrate judge's report and recommendation on a dispositive motion. Fed. R. Crim. P. 59(b)(2). If a party objects, the district judge must review *de novo* the recommendations of the magistrate judge to

7

which a party timely objects. 28 U.S.C. Section 636(b)(1); Fed. R. Crim. P. 59(b)(2), (3). The court can "accept, reject, or modify in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1).

B. Analysis

"The Fourth Amendment protects the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Carpenter, 138 S. Ct. at 2213. "For much of our history, Fourth Amendment search doctrine was 'tied to common-law trespass' and focused on whether the Government 'obtains information by physically intruding on a constitutionally protected area.'" Id. (quoting Jones, 565 U.S. at 406 n.3). Over time, the Supreme Court began to recognize that 'property rights are not the sole measure of Fourth Amendment violations," id. (quoting Soldal v. Cook Cty., 506 U.S. 56, 64 (1991)), and held that "the Fourth Amendment protects people, not places," id. (quoting Katz, 389 U.S. at 351). When an individual "'seeks to preserve something as private,' and his expectation of privacy is 'one that society is prepared to recognize as reasonable,' [the Supreme Court] has held that official intrusion into that private sphere generally qualifies as a search and requires a warrant supported by probable cause." Id. (citing Smith v. Maryland, 442 U.S. 735, 740 (1979)).

The motion to suppress argued that the defendant had a "reasonable expectation of privacy . . . [in] the aggregate of his movements while inside and outside of the 2200 N. Martin Luther King Jr. Blvd. complex." Dkt. No. 195 at 1. He argued that Carpenter demonstrated that "the Supreme Court is ready to hold that long-term surveillance of an individual's home constitutes a search" because that decision found that "'[a] person does not surrender all Fourth

8

Amendment protection by venturing into the public sphere.'" Id. at 3 (quoting Carpenter, 138 S. Ct. at 2217).

The Carpenter Court held that the government's acquisition of CSLI violated the Fourth Amendment. Carpenter, 138 S. Ct. at 2217. The Court recognized that "[a]s technology has enhanced the Government's capacity to encroach upon areas normally guarded from inquisitive eyes, [the Supreme] Court has sought to 'assure [] preservation of that degree of privacy against government that existed when the Fourth Amendment was adopted.'" Carpenter, 138 S. Ct. at 2214 (quoting Kyllo v. United States, 533 U.S. 27, 34 (2001)). It reasoned that mapping a cell phone's location over the course of 127 days provided an "intimate window into a person's life, revealing not only his particular movements, but through them his 'familial, political, professional, religious, and sexual associations.'" Id. (quoting Jones, 565 U.S. at 415). The Court explained that its decision was a "narrow one" that did not call into question "conventional surveillance techniques and tools, such as security cameras." Id., 128 S. Ct. at 2220.

The defendant reads Carpenter too broadly. Not only did not the text of the decision explicitly limit itself to CSLI, but its rationale relied on the fact that by its nature, a cell phone

> tracks nearly exactly the movements of its owner. While individuals regularly leave their vehicles, they compulsively carry cell phones with them all the time. A cell phone faithfully follows its owner beyond public thoroughfares and into private residences, doctor's offices, political headquarters, and other potentially revealing locales.

Carpenter, 138 S. Ct. at 2217.

In contrast, stationary video surveillance of the exterior of the apartment building on Martin Luther King Blvd., and the hallway outside of the

9

apartment, could capture only limited information: how many people came to the apartment complex and when; how many left, and when; how many people entered the apartment and when; how many left it and when. In some instances, it captured the identities of the people who entered and left the apartment. Unlike a cell phone, the video surveillance did not track the totality of the defendant's movements. It tracked only his arrival to and departure from a residence that wasn't his. The defendant's attempt to equate a process that records only what someone standing in the apartment hallway, or outside the apartment complex, could have seen with a process follows a person into homes, places of worship, hotels, bedrooms, restaurants and meetings, takes Carpenter's reasoning too far.

The Supreme Court has explained that "[t]he Fourth Amendment protection of the home has never been extended to require law enforcement officers to shield their eyes when passing by a home on public thoroughfares." Ciraolo, 476 U.S. at 213; see dkt. no. 219 at 3. "Nor does the mere fact that an individual has taken measures to restrict some view of his activities preclude an officer's observations from a public vantage point where he has a right to be and which renders the activities clearly visible." Id. (citing cases). Nothing in the Carpenter decision indicated that the Supreme Court disavowed these principles from Ciraolo, and Carpenter did not mention Ciraolo.

Since the Seventh Circuit decided Concepcion in 1991, the governing precedent in this circuit has held that "a tenant has no reasonable expectation of privacy in the common areas of an apartment building." Concepcion, 942 F.2d at 1172. In Concepcion, police officers entered the hallway of an apartment building after seeing the suspect's name on the mailbox outside and observing him using the building. Id. at 1171. The Seventh Circuit found that

the defendant could not assert a reasonable expectation of privacy in an area that was accessible to fellow tenants, guests, postal carriers, custodians and peddlers. Id. at 1172. As Judge Jones noted, that conclusion is binding precedent on this court. Dkt. No. 219. And if a *tenant* does not have a reasonable expectation of privacy in the common areas of an apartment building, how could the defendant here, who did not live in the apartment on Martin Luther King Blvd., have had such an expectation?

The defendant objects that his situation is "at odds" with Concepcion. He doesn't explain why he feels this is so, and it is difficult for this court to imagine why. Both cases involve surveillance of the common areas of an apartment building. It is true that one involved traditional surveillance with law enforcement eyes, unaided by technology (Concepcion); the other involved surveillance with a camera (this case). But the defendant does not explain why that fact makes a difference. It is also true that the defendant in Concepcion lived in the apartment building where the officers searched the common areas and the defendant in this case did not, but that fact cuts against the defendant's argument that he had a reasonable expectation of privacy.

The defendant urges the court to compare his facts to those in Whitaker. Dkt. No. 223 at 9. The defendant argues that a video surveillance camera is analogous to a drug-sniffing dog—a "'sophisticated sensing device not available to the general public.'" Id. (quoting Whitaker, 820 F.3d at 854).

The comparison is not convincing. The defendant admits that "[a]t the time the Fourth Amendment was adopted, the government could have assembled a team of agents to take turns sitting on top of a pole or to live in the apartment hallway to conduct physical surveillance without conducting a search." Dkt. No. 195 at 7. The video camera does the same thing—it sits on

11

top of the pole, or resides across the hallway, and conducts surveillance. It does exactly what a human law enforcement agent could do. That distinguishes the video camera from the narcotics dog, because "a trained drug-sniffing dog is a sophisticated sensing device not available to the general public." Whitaker, 820 F.3d at 853. The defendant does not argue that the video cameras had any heightened capabilities (such as infrared technology) or that they allowed law enforcement to see what was going on inside the apartment, or what was going on after the defendant left the apartment complex.

The defendant argues that a pole camera *can* do something that human law enforcement agents can't do—it can conduct surveillance continuously for a longer period at lower cost and with less likelihood of detection. This is true. And there are courts who have expressed concern that 24/7 surveillance of the outside of a person's house for an extended period raises questions about privacy, because it gives law enforcement a view of many aspects of the resident's life that traditional, human-eye surveillance could not obtain. But the duration of the surveillance is relevant only if the defendant had a reasonable expectation of privacy in the common areas of the Martin Luther King Blvd. apartment complex—and he didn't.

The defendant asserts that, despite binding Seventh Circuit precedent holding that a tenant (and certainly a non-tenant visitor) does not have a reasonable expectation of privacy in the common areas of an apartment complex, Judge Jones should have considered decisions from other courts. He cites United States v. Cuevas-Sanchez, 821 F.2d 248 (5th Cir. 1987). That case is inapposite; the defendant in Cuevas-Sanchez had erected a ten-foot-high fence around his own back yard, and the pole camera was set up to look over the fence and into the backyard. The Fifth Circuit found that the defendant

12

had demonstrated a reasonable expectation of privacy in his own, fenced-in back yard. Id. at 250. The district court in Nevada faced a similar situation in Shafer v. City of Boulder, 896 F. Supp. 2d 915 (D. Nev. 2012). The cameras in that case were pointed at the plaintiff's back yard and bathroom window. Finding (as did the Fifth Circuit in Cuevas-Sanchez) that a person's back yard is part of the curtilage of his home, and that it was fenced in by a four- to five-foot tall fence, the Shafer court concluded that the back yard was entitled to Fourth Amendment protection. The cameras in Shafer also were "long-range, infrared, heavy-duty, waterproof, daytime/nighttime cameras, purchased as part of a $50,000 Department of Homeland security grant to combat terrorism and similar criminal activities," and, according to the court, "undoubtedly contained superior video-recording capabilities than a vide camera purchased from a department store." Id. at 932. The court was not able to unearth the Vargas case from the Eastern District of Washington, to which the defendant referred, but the defendant himself says that that case involved surveillance of the defendant's front yard. Dkt. No. 223 at 10. The facts before the South Dakota Supreme Court in State v. Jones involved extended pole-camera surveillance of the outside of the defendant's trailer, the adjoining street and his yard—areas that the court agreed were areas exposed to the public. State v. Jones, 903 N.W.2d 101, 107 (S.D. 2017). The court conceded that there were other courts that had concluded that pole camera surveillance did not constitute a search "based on controlling precedent in the respective circuit *or because the area surveilled was not a home or the defendant's home.*" Id. at 108. Because the Jones court was not constrained in those ways, it analyzed the facts under the Supreme Court's reasoning in Katz, 389 U.S. at 351, and concluded that the surveillance constituted a search. The final case the

13

defendant argues that Judge Jones failed to consider is United States v. Garcia-Gonzalez, Case No. 14-10296-LTS, 2015 WL 5145537 (D. Mass. Sept. 1, 2015). In a case involving installation of a public pole camera that captured the door to the defendant's apartment and a law-enforcement camera that captured the lot where he parked. Like the defendant in this case, Garcia-Gonzalez argued that these two cameras captured "the aggregate of all of his coming and going from the home, all of his visitors, all of his cars, all of their cars, and all of the types of packages or bags he carried and when." Id. at *5. They recorded all the defendant's visitors, the people with whom he traveled, the cars he drove, what he carried in and out of his house, the times when he was home and when he was away. Id. The district court opined that "the pole camera was akin to stationing a police officer at the front door by whom every person and object must pass." Id. The district court stated that "[l]engthy, sustained surveillance of a person's home during which the police observe (and record) every coming and going to the home raises substantial privacy concerns," and noted that other courts had expressed the same concern. Id. at 8. Nonetheless, the court denied the motion to suppress because it was bound by First Circuit precedent to the contrary. Id. at 9.

Even if Judge Jones didn't consider these cases (and the court doesn't know whether he did or not), his failure to do so would not have constituted an error. All of these cases involved pole cameras that recorded yards or doors or parking lots connected to the defendants' *residences*, a place recognized since the beginning of Fourth Amendment jurisprudence as one in which a resident has a reasonable expectation of privacy. The pole camera in this case did not record the defendant's comings and goings from his residence—it recorded his comings and goings from his drug stash house, in the public, common areas of

14

an apartment building. The Seventh Circuit has said that even a resident doesn't have a reasonable expectation of privacy in the common areas of an apartment complex, so the court is hard-pressed to see how the defendant's expectation of privacy could be reasonable when he wasn't even a resident. These cases do not support the defendant's argument.

The defendant neglects to mention the many cases in which courts have rejected his reasoning—including a case decided by this court. In Kubasiak, this court considered pole camera surveillance with recorded using a fixed camera placed in a neighbor's house which recorded only the exterior of a residence. Kubasiak, Case No. 18-Cr-120, Dkt. No. 48 at 15-16. This court found that "[t]he surveillance did not present the kind of aggregate view of intimate details of the defendant's every movement that concerned the concurrence in Jones, or the majority in Carpenter." Id. The same analysis applies here. At most, the pole camera captured the defendant's comings and goings from an apartment in which he did not reside, in a building in which he did not reside, for a period of (according to the defendant's "information and belief") forty-nine days. Even assuming the defendant appeared on the pole camera surveillance footage every day, it would not have recorded who visited his home, when he was home and when he was away, what his daily schedule was, who he lived with.

Judge Jones did not err in recommending that this court deny the motion to suppress, and the court will adopt that recommendation.

### III. CONCLUSION

The court **OVERRULES** the defendant's objections to Judge Jones's report and recommendation. Dkt. No. 223.

The court **ADOPTS** Judge Jones's recommendation. Dkt. No. 219.

15

The court **DENIES** the defendant's motion to suppress. Dkt. No. 195.

The deadline for the parties to file pretrial motions has passed, and this was the only motion pending. The court's staff will calendar a date for a scheduling conference, to discuss with this defendant and the others who have not resolved their cases whether the court needs to set dates for a final pretrial conference and a trial.

Dated in Milwaukee, Wisconsin this 16th day of May, 2019.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**United States District Judge**